Matthew Morrison
Morrison Law Office
1887 N 270 E
Orem, UT 84057
matt@oremlawoffice.com
Telephone: (801) 845-2581

*Attorney for Plaintiff and the putative Classes*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

**JASON WHITTINGTON,** individually and on behalf of all other similarly situated,

*Plaintiff,*

*v.*

**CAMELBACK ADMINISTRATIVE GROUP, INC.**, an Arizona corporation,

*Defendant.*

Case No. 26-cv-00042

**CLASS ACTION COMPLAINT**

**JURY DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Jason Whittington ("Plaintiff Whittington" or "Whittington") brings this Class Action Complaint and Demand for Jury Trial against Defendant Camelback Administrative Group, Inc. d/b/a MotoAssure ("Defendant" or "MotoAssure") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the Utah Telephone & Facsimile Solicitation Act ("UTFSA") by placing unsolicited calls despite requests for the calls to stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Whittington alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Whittington is a resident of Saint George, Utah.

2. Defendant MotoAssure is an Arizona registered corporation located in Scottsdale, Arizona. Defendant MotoAssure conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 (“TCPA”). The Court has supplemental jurisdiction over the UTFSA claim because it arises from the same conduct as the TCPA claim.

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) the Plaintiff resides in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term, “Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people’s representatives in Congress have been fighting back.” *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in November 2025 alone, at a rate of 128.7 million per day. www.robocallindex.com (last visited December 28, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Camelback Administrative Group, Inc. operates using the d/b/a MotoAssure:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

**For claims assistance, please contact the Administrator, Camelback Administrative Group, Inc. dba MotoAssure at (888) 585-4441.** [3]

15. MotoAssure provides extended vehicle warranty plans to consumers.[4]

16. MotoAssure is believed to share operations with CarGuard Administration, Inc. ("CarGuard").

17. Both MotoAssure and CarGuard are located in the same shared suite in Arizona:

CAMELBACK ADMINISTRATIVE GROUP, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | F21000002639 |
| **FEI/EIN Number** | 86-2580133 |
| **Date Filed** | 05/14/2021 |
| **State** | AZ |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 03/09/2023 |
| **Event Effective Date** | NONE |

**Principal Address**

6991 E CAMELBACK RD
STE C309
SCOTTSDALE, AZ 85251 [5]

[3] https://jrautoprotect.com/wp-content/uploads/2024/06/MotoAssureExclusionary.pdf
[4] https://www.motoassureadmin.com/
[5] https://shorturl.at/BPQGF

**Name**
CARGUARD ADMINISTRATION INC

**Filing ID**
2015-000687160

**Type**
Profit Corporation - Foreign

**Status**
Active

**Sub Status**
Current

**Initial Filing**
05/20/2015

**Standing - Tax**
Good

**Standing - RA**
Good

**Standing - Other**
Good

**Term of Duration**
Perpetual

**Formed In**
Arizona

**Fictitious Name**

**Principal Office**
6991 E CAMELBACK RD STE C309
Scottsdale, AZ 85251-2432
USA

**Mailing Address**
6991 E Camelback Rd Ste C309
Scottsdale, Arizona 85251
USA [6]

18. In addition, both MotoAssure and CarGuard share ownership and employees:

**Officer/Director Detail**

**Name & Address**

Title DPST

MotoAssure

SMITH, TREVOR
6991 E Camelback Rd Ste C309
Scottsale, AZ 85251 [7]

Parties

CarGuard

Trevor Smith (President / Director)
Address: 6991 E Camelback Rd Ste C309, Scottsdale, AZ 85251 [8]

[6] https://shorturl.at/8nPyQ
[7] https://shorturl.at/BPQGF
[8] https://shorturl.at/8nPyQ



Nicholas (Nick) Wahlstrom
Operational and Turn Around Expert

Experience

CarGuard Administration, INC
Full-time · 7 yrs 6 mos

Chief Technical Officer
Nov 2022 - Present · 3 yrs 2 mos
Scottsdale, Arizona, United States

Business Development, Presentation Skills and +5 skills

Director Of Operations
Jul 2018 - Present · 7 yrs 6 mos

Business Development, Presentation Skills and +5 skills

Chief Technology Officer
Camelback Administration · Full-time
Jul 2018 - Present · 7 yrs 6 mos
Scottsdale, Arizona, United States · Remote

Business Development, Presentation Skills and +19 skills

[9]

19. Both MotoAssure and CarGuard solicit extended vehicle warranty plans to consumers through at least one call center.

20. The call center(s) are placing unsolicited calls to consumers, even after being told to stop calling, as per Plaintiff's experience.

21. CarGuard has had over 25 different lawsuits filed against it alleging violations of the TCPA:

[9] https://www.linkedin.com/in/nicholas-nick-wahlstrom-78166582/?utm_source=chatgpt.com

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| CarGuard Administration (dft) | 1:2022cv04097 | Kannon v. Warranty Protection Services et al | NEW YORK EASTERN DISTRICT COURT | 890 | 07/13/2022 | 02/23/2023 |
| CarGuard Administration Inc (dft) | 8:2022cv00820 | Angela Constantine v. CarGuard Administration Inc et al | CALIFORNIA CENTRAL DISTRICT COURT | 485 | 04/15/2022 | 01/27/2023 |
| CarGuard Administration Inc (dft) | 3:2023cv00790 | Pinn v. Vehicle Protection Specialists LLC et al | TEXAS NORTHERN DISTRICT COURT | 485 | 04/13/2023 | 06/26/2023 |
| CarGuard Administration INC (dft) | 3:2020cv00118 | Callier v. CarGuard Administration INC et al | TEXAS WESTERN DISTRICT COURT | 485 | 05/01/2020 | 07/09/2020 |
| CarGuard Administration Inc. (dft) | 6:2022cv00408 | Tatum v. CarGuard Administration Inc. | TEXAS EASTERN DISTRICT COURT | 485 | 10/21/2022 | 12/20/2022 |
| Carguard Administration Inc. (dft) | 3:2023cv00108 | Salaiz v. Carguard Administration Inc. | TEXAS WESTERN DISTRICT COURT | 485 | 03/10/2023 | 04/05/2023 |
| Carguard Administration Inc. (dft) | 3:2022cv00172 | Salaiz v. Carguard Administration Inc. et al | TEXAS WESTERN DISTRICT COURT | 485 | 05/16/2022 | 06/09/2022 |
| CarGuard Administration Incorporated (dft) | 2:2023cv00961 | Workman v. CarGuard Administration Incorporated | ARIZONA DISTRICT COURT | 485 | 05/31/2023 | 01/23/2025 |
| CARGUARD ADMINISTRATION, INC (dft) | 2:2022cv01952 | BACCARI v. CARGUARD ADMINISTRATION, INC | PENNSYLVANIA EASTERN DISTRICT COURT | 485 | 05/18/2022 | 08/08/2022 |
| Carguard Administration, Inc (dft) | 3:2021cv00277 | Salaiz v. A-List Marketing Solutions, Inc et al | TEXAS WESTERN DISTRICT COURT | 485 | 11/05/2021 | 12/01/2021 |
| CARGUARD ADMINISTRATION, INC an § Arizona corporation (dft) | 3:2020cv00302 | Herrera v. CARGUARD ADMINISTRATION, INC an § Arizona corporation et al | TEXAS WESTERN DISTRICT COURT | 485 | 12/07/2020 | |
| Carguard Administration, Inc. (dft) | 8:2020cv02248 | Nathan Rowan v. Direct Marketing Group LLC et al | CALIFORNIA CENTRAL DISTRICT COURT | 485 | 11/30/2020 | 01/27/2021 |
| CarGuard Administration, Inc. (dft) | 5:2021cv01192 | Betty Moore v. Legion Auto Protection Services et al | CALIFORNIA CENTRAL DISTRICT COURT | 890 | 07/16/2021 | 02/24/2023 |
| Carguard Administration, Inc. (dft) | 8:2021cv01363 | Kimberly Starling v. Vehicle Protection Specialists LLC et al | CALIFORNIA CENTRAL DISTRICT COURT | 890 | 08/18/2021 | 01/22/2023 |
| Carguard Administration, Inc. (dft) | 8:2023cv00107 | Robert Clough, II v. Highway Automotive Pros LLC | CALIFORNIA CENTRAL DISTRICT COURT | 485 | 01/18/2023 | 01/17/2024 |
| CarGuard Administration, Inc. (dft) | 1:2021cv02135 | Quiat et al v. Direct Marketing Group LLC et al | COLORADO DISTRICT COURT | 485 | 08/06/2021 | 09/21/2022 |
| CarGuard Administration, Inc. (dft) | 1:2022cv01046 | Tschatschula v. CarGuard Administration, Inc. | COLORADO DISTRICT COURT | 485 | 04/29/2022 | 08/15/2022 |
| CarGuard Administration, Inc. (dft) | 1:2021cv00975 | Moore v. Auto Protecht LLC et al | ILLINOIS NORTHERN DISTRICT COURT | 485 | 02/22/2021 | 04/27/2021 |
| CarGuard Administration, Inc. (dft) | 1:2021cv01735 | Torres v. Vehicle Protection Specialists et al | ILLINOIS NORTHERN DISTRICT COURT | 485 | 03/31/2021 | 06/14/2021 |
| CarGuard Administration, Inc. (dft) | 1:2020cv10746 | Barrett et al v. CarGuard Administration, Inc. et al | MASSACHUSETTS DISTRICT COURT | 890 | 04/16/2020 | 06/05/2020 |
| CarGuard Administration, Inc. (dft) | 1:2020cv11487 | Barrett et al v. CarGuard Administration, Inc. et al | MASSACHUSETTS DISTRICT COURT | 890 | 08/06/2020 | 08/27/2020 |
| CarGuard Administration, Inc. (dft) | 1:2020cv12073 | Barrett et al v. CarGuard Administration, Inc. et al | MASSACHUSETTS DISTRICT COURT | 890 | 11/19/2020 | 05/13/2021 |
| CarGuard Administration, Inc. (dft) | 1:2021cv10150 | Traylor v. CarGuard Administration, Inc. et al | MASSACHUSETTS DISTRICT COURT | 485 | 01/28/2021 | 04/06/2021 |
| CarGuard Administration, Inc. (dft) | 8:2021cv00010 | Shanahan v. CarGuard Administration, Inc. et al | NEBRASKA DISTRICT COURT | 485 | 01/07/2021 | 03/31/2021 |
| CarGuard Administration, Inc. (dft) | 1:2021cv00369 | Perry v. Vehicle Protection Specialists et al | NEW YORK NORTHERN DISTRICT COURT | 485 | 04/01/2021 | 05/27/2021 |
| CarGuard Administration, Inc. (dft) | 4:2021cv01034 | Gibson v. Vehicle Protection Specialists et al | TEXAS SOUTHERN DISTRICT COURT | 485 | 03/30/2021 | 05/27/2021 |
| Carguard Administration, Inc. (dft) | 3:2022cv00098 | Gonzalez v. A-List Marketing Solutions, Inc. et al | TEXAS WESTERN DISTRICT COURT | 485 | 03/17/2022 | 06/02/2022 |

[10]

22. Upon information and belief, Defendant MotoAssure was formed by CarGuard's ownership and operates from the same location with shared personnel while CarGuard faces ongoing TCPA litigation.

23. Based on Plaintiff's experience, MotoAssure contracts with, or operates call centers that place unsolicited telemarketing calls to consumers to generate business.

[10] Pacer search as of December 28, 2025

24. Based on the seamless integration of calling operations, agents' direct access to MotoAssure's customer database, agents' identification of themselves as being with MotoAssure, and the coordinated nature of the solicitations, Defendant MotoAssure directly operated and controlled the call centers that placed the calls to Plaintiff.

25. The caller ID displays of "Auto Care" and "ACare" were names used by Defendant or its call centers when placing calls, but do not reflect separate corporate entities. Upon information and belief, "Auto Care" and "ACare" are fictitious names or d/b/a designations used by Defendant when making calls.

26. In response to these calls, Plaintiff Whittington brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and UTFSA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF WHITTINGTON'S ALLEGATIONS**

27. Plaintiff Whittington is the sole owner and exclusive user of his cell phone number ending in 5229.

28. Plaintiff Whittington's cell phone number has a 435 Utah area code.

29. Plaintiff Whittington is a resident of Utah and was present in Utah when he received calls from Defendant MotoAssure.

30. Plaintiff Whittington uses his cell phone number for personal use only as one would use a landline telephone number in a home.

31. Plaintiff Whittington uses his cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for his other household needs.

32. Plaintiff Whittington pays for his cell phone plan. It is not reimbursed by a business.

33. On November 10, 2025, Plaintiff Whittington answered a call that displayed the caller ID Auto Care.

34. When Plaintiff answered this call, an agent began a solicitation for an extended vehicle warranty.

35. Plaintiff told the agent not to call his phone number and asked to be taken off the company's call list.

36. Despite his clear stop request, Plaintiff Whittington received additional unsolicited calls to his cell phone on:

- November 12, 2025 from 801-640-2362
- November 13, 2025 at 9:15 AM from 801-640-2560
- November 13, 2025 at 11:10 AM from 435-334-6251;
- November 13, 2025 at 12:05 PM from 801-880-8399; and
- November 13, 2025 at 2:22 PM from 801-640-3296.

37. None of these calls were answered, but they all displayed the name Auto Care.

38. On November 13, 2025 at 4:57 PM, Plaintiff Whittington answered a call that displayed the company name Auto Care from 435-337-4434:




39. The agent began by claiming that she was with Ford, and confirmed Plaintiff's vehicle information.

40. Plaintiff Whittington was then transferred to an employee who identified himself as Steve Ruddy.

41. Plaintiff Whittington asked about who Auto Care is, to which Ruddy explained that the administrator of the warranty is MotoAssure.

42. Plaintiff Whittington asked for a callback number, to try and confirm that Ruddy is with MotoAssure.

43. Ruddy said that a computer generates whatever phone number he calls from, so he wouldn't know what it would be, and couldn't provide a direct number to be called at.

44. Ruddy's statement that "a computer generates whatever phone number he calls from" demonstrates that Defendant MotoAssure operated or controlled the automated calling technology used to place calls to Plaintiff.

45. Plaintiff Whittington agreed to accept a call from Ruddy on the following morning so he could try and identify that company behind the calls.

46. On November 17, 2025, Plaintiff Whittington's attorneys had an employee send a demand for consent email with a stop calling request to MotoAssure.

47. Despite the stop request from his attorneys, Plaintiff Whittington received additional unsolicited calls.

48. On November 20, 2025 at 10:30 AM, Plaintiff Whittington received another call to his cell phone displaying the caller ID Auto Care from 801-640-2217:




49. When Plaintiff answered this call, an agent said that she was with Ford and began asking questions about Plaintiff's vehicle to solicit an extended vehicle warranty.

50. Plaintiff Whittington asked a question, but the agent said that a Ford specialist would answer and began a call transfer.

51. Music played for a few minutes before a live employee came on the line introducing himself as Jamie Fodi.

52. Fodi confirmed Plaintiff's name, but he had the rest of the vehicle information.

53. Plaintiff Whittington asked about Auto Care and explained that his Ford dealership didn't recognize the company name.

54. Fodi explained that the administrator of the warranty is MotoAssure, which he spelled out and then provided the website MotoAssureAdmin.com.

55. Fodi referred to MotoAssure thereafter using the term "we" and said, "We're a direct administrator."

56. Fodi's use of "we" when referring to MotoAssure, combined with his direct access to Plaintiff's information, demonstrates that Fodi and other agents making the calls were operating under MotoAssure's direct control and as part of MotoAssure's operations.

57. Plaintiff Whittington asked where Fodi is located and Fodi said that he's at the corporate office without elaborating further.

58. Fodi disconnected the call when Plaintiff began voicing his concern about getting a warranty by phone, so Plaintiff was unable to ask again for the calls to stop.

59. After November 20, 2025, the calls displayed "ACare" instead of "Auto Care" on caller ID. Upon information and belief, Defendant changed the displayed caller ID name in an attempt to evade Plaintiff's do-not-call requests while continuing to make calls from the same call centers operated by or for Defendant.

60. For example, Plaintiff Whittington received unsolicited calls on:

- November 18, 2025 from 801-459-8241;
- November 18, 2025 from 801-640-2798;
- November 18, 2025 from 435-288-7649;
- November 18, 2025 from 435-222-3691;
- November 19, 2025 from 801-880-9103;
- November 19, 2025 from 435-417-3591;
- November 19, 2025 from 801-880-4797;
- November 19, 2025 from 435-334-6906;
- November 20, 2025 from 435-417-3636 (twice);
- November 20, 2025 from 801-880-9103 (twice);
- November 21, 2025 from 801-880-9103;
- November 21, 2025 from 801-843-5941;
- December 1, 2025 from 425-335-6763;
- December 1, 2025 from 435-334-6765;
- December 2, 2025 from 435-334-6906;
- December 3, 2025 from 801-640-2215;
- December 4, 2025 at 9:16 AM from 801-880-7348;
- December 4, 2025 at 9:57 AM from 435-708-7753; and
- December 4, 2025 at 10:48 AM from 801-683-5701.

61. On December 2, 2025, Plaintiff's attorneys had an employee send a second email to MotoAssure stating that it had been more than 10 days since the last demand for consent, questioning if MotoAssure has consent to call Plaintiff Whittington.

62. On December 4, 2025, Plaintiff Whittington received unsolicited calls to his cell phone from 801-880-8399 at 2:47 PM and 801-640-2914 at 4:07 PM.

63. These calls were answered, but Plaintiff was unable to spend time trying to confirm which company had called him.

64. Both of these calls began with a "bloop" sound followed by a pause, indicating the use of an autodialer.

65. Both of these calls displayed the caller ID ACare:




66. On December 4, 2025 at 4:26 PM, Plaintiff Whittington received another unsolicited call to his cell phone from 801-640-2793, displaying the name ACare:




67. When Plaintiff Whittington answered this call, an employee began asking a few questions about Plaintiff's vehicle, stating that he was calling from Ford.

68. When Plaintiff Whittington answered the questions, he was put on hold.

69. The same music that played during this call was playing during the November 19 answered call.

70. An employee came on the line and introduced herself as Brianna, a senior coverage specialist for Ford.

71. Plaintiff Whittington asked who ACare is and was told that Brianna is in a corporate office that processes the policies for Ford.

72. Brianna elaborated and said that the administrator is MotoAssure, thereby indicating that she works for MotoAssure.

73. Plaintiff Whittington asked Brianna if there's a company website, so Brianna told Plaintiff to looked up "MotoAssureAdmin" in Google.

74. MotoAssureAdmin.com is the main website for MotoAssure.

75. Plaintiff Whittington received additional unsolicited calls that he did not answer, all of which displayed the name ACare:

- December 9, 2025 from 435-667-1764;
- December 10, 2025 at 9:21 AM from 801-640-3495;
- December 12, 2025 from 801-880-7352;
- December 13, 2025 at 10:38 AM from 801-880-8874;
- December 13, 2025 at 12:51 PM from 435-395-3894; and
- December 13, 2025 at 3:38 PM from 801-459-3935;

76. Plaintiff Whitting believes that the calls were placed by MotoAssure because:

a) The callers and employees that Plaintiff was transferred to all claimed to be with Ford and were all working from the same database of information;

b) In the 3 answered calls, Plaintiff was told that the administrator is MotoAssure;

c) The employee Jamie Fodi stated, "we're a direct administrator" and continued to use "we" in referring to MotoAssure specifically; and

d) The employee Brianna stated that she works in a corporate office that processes the policies for Ford, and that MotoAssure is the administrator.

77. Plaintiff Whittington has never done business with MotoAssure.

78. The unauthorized solicitation calls that Plaintiff received from the Defendant have harmed Plaintiff Whittington in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

79. Plaintiff felt harassed by the calls, especially since there were so many calls and the calls continued after his stop call request, and the stop request of his attorneys.

80. Seeking redress for these injuries, Plaintiff Whittington, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA and Utah Telephone & Facsimile Solicitation Act.

## CLASS ALLEGATIONS

81. Plaintiff Whittington brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant MotoAssure called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

> **Utah Do Not Call Class:** All persons in Utah who from four years prior to the filing of this action through class certification (1) received two or more telephone calls from Defendant MotoAssure to their residential telephone number (2) where the calls were placed for the purpose of soliciting Defendant's warranty products (3) after MotoAssure had already been informed either in writing or orally that the person did not wish to receive calls from MotoAssure.

> **Utah Failure To Properly Identify Class:** All persons in Utah who from four years prior to the filing of this action through class certification (1) Defendant MotoAssure placed a call to their residential telephone number (2) where the call was placed for the purpose of soliciting Defendant's warranty products (3) where the caller failed to properly identify the telephone solicitor, identify Camelback Administrative Group as the business on whose behalf the solicitation was being made, or provide accurate contact information for Defendant.

82. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Whittington anticipates the need to amend the Class definitions following appropriate discovery.

83. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

84. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(b) whether the phone calls constitute a violation of the TCPA;

(c) whether the phone calls constitute a violation of the UTFSA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

85. **Adequate Representation**: Plaintiff Whittington will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Whittington has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Whittington and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Whittington nor his counsel have any interest adverse to the Classes.

86. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Whittington. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Whittington and the Internal Do Not Call Class)**

87. Plaintiff repeats and realleges paragraphs 1-86 of this Complaint and incorporates them by reference herein.

88. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf

> the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

89. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

90. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

91. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## SECOND CAUSE OF ACTION
**Utah Telephone & Facsimile Solicitation Act**
**(Violation of Utah Code §§ 13-25a-107.2)**
**(On Behalf of Plaintiff Whittington and the Utah Do Not Call Class)**

92. Plaintiff repeats and realleges paragraphs 1-86 of this Complaint and incorporates them by reference herein.

93. Utah Code § 13-25a-107.2(1) provides: "A telephone solicitor may not make or cause to be made a telephone solicitation to a person who has informed the telephone solicitor, either in writing or orally, that the person does not wish to receive a telephone call from the telephone solicitor."

94. Defendant's telephone solicitations to Plaintiff and the Utah Do Not Call Class, after receiving written and oral notice that Plaintiff and the Utah Do Not Call Class did not wish to receive calls from Defendant violated Utah Code § 13-25a-107.2(1).

95. Utah Code § 13-25a-107(1)(a) provides that a person may bring a private action if: a. "the person has received two or more telephone solicitations or facsimile advertisements from the same individual or entity that: (A) violates this chapter... and b. (ii) the person, following the first telephone solicitation or facsimile advertisement, notified the sender of the person's objection to receiving the telephone solicitation or facsimile advertisement."

96. Utah Code § 13-25a-107(2)(a) provides that Plaintiff and the Utah Do Not Call Class may "recover the greater of $500 or the amount of the pecuniary loss, if any" for each violation.

97. Utah Code § 13-25a-107(2)(b) provides that "if the court finds that a violation was knowing and willful," the court may award treble damages.

98. Utah Code § 13-25a-107(2)(a)(ii) provides that Plaintiff may "recover court costs and reasonable attorneys' fees as determined by the court."

**<u>THIRD CAUSE OF ACTION</u>**
**Utah Telephone & Facsimile Solicitation Act**
**(Violation of Utah Code §§ 13-25a-103(5))**
**(On Behalf of Plaintiff Whittington and the Utah Failure To Properly Identify Class)**

99. Plaintiff repeats and realleges paragraphs 1-86 of this Complaint and incorporates them by reference herein.

100. Utah Code § 13-25a-103(5) provides: "Any telephone solicitor who makes an unsolicited telephone call to a telephone number shall: (a) identify the telephone solicitor; (b) identify the business on whose behalf the telephone solicitor is soliciting; (c) identify the purpose of the call promptly upon making contact by telephone with the person who is the object of the telephone solicitation..."

101. The false representation that the callers were "with Ford" or provided warranties "for all Ford dealerships" constitutes a failure to properly identify the business on whose behalf the solicitation was being made, as required by Utah Code § 13-25a-103(5)(b).

102. The failure to identify Defendant Camelback Administrative Group and instead only referencing "MotoAssure" as an "administrator" or "underwriter" obscured the true identity of the business on whose behalf the solicitation was being made.

103. Defendant's failure to properly identify the telephone solicitor and the business on whose behalf the solicitation were being made violated Utah Code § 13-25a-103(5).

104. Utah Code § 13-25a-107(1)(b) provides that a person may bring a private action if "the person has received one telephone solicitation or facsimile advertisement in violation of... Subsection 13-25a-103(5)."

105. Plaintiff and the Utah Failure To Properly Identify Class received at least two telephone solicitations in violation of Utah Code § 13-25a-103(5).

106. Utah Code § 13-25a-107(2)(a) provides that Plaintiff and the Utah Failure To Properly Identify Class may "recover the greater of $500 or the amount of the pecuniary loss, if any" for each violation.

107. Utah Code § 13-25a-107(2)(b) provides that "if the court finds that a violation was knowing and willful," the court may award treble damages.

108. Utah Code § 13-25a-107(2)(a)(ii) provides that Plaintiff may "recover court costs and reasonable attorneys' fees as determined by the court."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the UTFSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Whittington requests a jury trial.

**JASON WHITTINGTON**, individually and on behalf of all others similarly situated,

DATED this 16th day of January, 2026.

By: /s/ *Matthew Morrison*

Morrison Law Office
1887 N 270 E
Orem, UT 84057
matt@oremlawoffice.com
Telephone: (801) 845-2581

Rachel E. Kaufman*
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*

** Lead Counsel*